IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TYRA INGRID HALL,                        *
                                         *
        Plaintiff,                       *
                                         *
vs.                                      *    CIVIL ACTION 09-00627-B
                                         *
MICHAEL J. ASTRUE,                       *
Commissioner of                          *
Social Security,                         *
                                         *
        Defendant.                       *

ORDER

Plaintiff Tyra Ingrid Hall ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. On June 17, 2010, the parties agreed to have the undersigned conduct any and all proceedings on this case. (Doc. 19). Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R. Civ. P. 73. (Doc. ). Oral arguments were held on June 17, 2010. Upon careful consideration of the administrative record, the oral arguments, and the memoranda of the parties, the decision of the Commissioner is **AFFIRMED.**

I.   Procedural History

Plaintiff protectively filed an application for supplemental security income on March 20, 2007. (Tr. 110-112). Plaintiff alleges that she has been disabled since October 31, 2006 due to the inability to bend her middle finger resulting from an injury, diabetes and diabetic neuropathy in her lower and upper extremities, chronic urinary tract infections and gastroparesis[1]. (Tr. 27-28, 110, 127). Plaintiff's application was denied at the initial stage, and she filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 65-66, 74). On December 16, 2008, Administrative Law Judge Linda J. Helm ("ALJ Helm") held an administrative hearing, which was attended by Plaintiff, her representative, and a vocational expert. (Tr. 23-64). On February 3, 2009, ALJ Helm issued an unfavorable decision and found that Plaintiff is not disabled. (Tr. 12-22). Plaintiff's request for review was denied by the Appeals Council ("AC") on August 27, 2009. (Tr. 1-4). Accordingly, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. Id. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1]Gastroparesis is a paralysis of the muscles of the stomach, resulting in delayed emptying of food from the stomach into the small intestine. See www.medicinenet.com. Last visited May 25, 2010.

## II. Issues on Appeal

A.    Whether the ALJ erred by assigning Plaintiff a residual functional capacity ("RFC") of light work.

B.    Whether the ALJ erred by failing to perform a function-by function analysis of Plaintiff's limitations in violation of 20 C.F.R. § 404.1545(b) and SSR 96-8p.

C.    Whether the ALJ erred in relying on the testimony of a VE to find that a significant number of jobs exist in the national economy that Plaintiff can perform.

## III. Factual Background

Plaintiff was born on January 20, 1982 and has a tenth-grade education.    (Tr. 29, 110).   She worked for a month in 2005 in the Section 8 office answering the phone, filing and cleaning.   She also worked for three months in 2002 at Bebo's Car Wash, cleaning out cars, and for a month in 2005, as a housekeeper at Holiday Inn.  (Tr. 139-143, 162).

Plaintiff testified that she had to quit her housekeeping job because of gastroparesis, and that she has not worked since that time because she is sick all the time.  (Tr. 33).   She further testified that she is unable to work because she has out-of-control diabetes; neuropathy in her arm, left leg, and left arm; gastroparesis; and urinary tract infections. (Tr. 34, 35, 44, 48).

According to Plaintiff, she cannot stand a long time because of neuropathy, and cannot grip or write with her right hand because of the injury to her right middle finger.   (Tr.

35).  Plaintiff testified that she can walk about a block, stand for 15 or 20 minutes and sit with a cushion.  (Tr. 37-38).  Plaintiff also testified that she reads a lot during the day, and that she stays active by sewing clothes for people.  (Tr. 39-40, 46).

## IV.  Analysis

### A.  Standard Of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[2]  A court  may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to

_____

[2]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

4

support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

**B.** **Discussion**

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 20, 2007, her application date. (Tr. 17). The ALJ also found that Plaintiff has the following severe impairments: diabetes mellitus with neuropathy, arthritis of the right middle finger, and history of gastroparesis. The ALJ concluded that Plaintiff's impairments, though severe, do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 17). The ALJ also found that Plaintiff retains the residual functional capacity ("RFC") to perform light work with the following limitations: need to alternate positions at will, cannot engage in repetitive fine fingering with her right hand, and cannot work at unprotected heights or work around dangerous

_____

relevant work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. *Id.* at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. *Sryock v. Heckler*, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). *See also* *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir. 1985)).

moving machinery due to her history of diabetic neuropathy. (Tr. 17-18). The ALJ found that Plaintiff has no past relevant work. Relying on the testimony of the VE, the ALJ concluded that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; thus, she is not disabled. (Tr. 21-22).

The relevant medical evidence includes office notes from University of South Alabama Hospitals (hereinafter "USA") from January 2007 through October 2008. Plaintiff was first seen at USA on January 2, 2007, with a right middle finger infection. Her physical exam was normal except for her right middle finger, described as septic proximal interphalangeal joint, having fusiform swelling, and held in a slightly flexed position. (Tr. 175-176). An x-ray report on this day showed extensive destruction of the articulations of the third proximal interphalangeal joint along with associated soft tissue swelling consistent with osteomyelitis[4]. (Tr. 188). She underwent an incision and debridement. (Tr. 177-178). On January 4, 2007, Plaintiff returned to USA for drainage of her infected right middle finger. (Tr. 179-180).

---

[4] Osteomyelitis is inflammation of the bone due to infection. See www.medicinenet.com. Last visited June 4, 2010.

During Plaintiffs' March 27, 2007 treatment at USA, her physical exam was normal except for right finger deformity. She was diagnosed with finger pain, and instructed to follow up with Stanton Road Clinic orthopedics. (Tr. 190-192). On March 31, 2007, abdominal x-rays showed left pelvic calcifications, most likely representing phleboliths[5], and rounded soft tissue opacity within the left mid abdomen of unknown if any clinical significance. Plaintiff was diagnosed with constipation, and instructed to discontinue Lortab and Amitryptyline[6]. (Tr. 193-197). In a discharge summary dated April 3, 2007, Plaintiff was diagnosed with septic right middle finger, proximal interphalangeal joint. (Tr. 173).

Plaintiff was next seen at USA on December 8, 2007. The treatment notes reflect that as a result of domestic abuse, Plaintiff suffered a five inch laceration on the back of her right thigh with pain and reduced range of motion, and pain in the second and third digits of her right hand with swelling. An x-ray of her right hand showed no acute fractures, but partial fusion of the epiphyses surrounding the proximal interphalangeal joint of the third digit, with possible septic arthritis versus chronic arthritis with an acute injury. Her wounds were

---

[5]A phlebolith is a calculus in a vein usually resulting from the calcification of an old thrombus. See www.nlm.nih.gov. (Last visited June 4, 2010.)
[6] Amitryptyline is a tricyclic antidepressant. See www.drugs.com. (Last visited June 24, 2010).

dressed, and she was instructed to follow-up at Stanton Road Clinic in seven days. (Tr. 204-213). She returned to USA on December 18, 2007 for staple removal. The treatment notes reflect that there was no sign of infection or drainage, and that she received a tetanus shot. (Tr. 200-203).

Plaintiff was treated at USA on July 29, 2008. Her physical examination was normal, except for 10/10 chest pain and her left second finger. An ECG on this day resulted in normal findings. Her glucose was elevated, and her chest x-ray was normal. (Tr. 259-270). Plaintiff returned to USA on August 7, 2008, and her physical exam was normal except for tenderness to palpation over the epigastric area. An x-ray of her abdomen resulted in no acute findings, and her glucose count was high. She was counseled about strict diabetic control. (Tr. 245-258). During an August 21, 2008 visit to USA, Plaintiff's physical exam was normal, and an abdominal x-ray resulted in no acute findings. Her glucose was high. (Tr. 234-244). On August 28, 2008, Plaintiff was seen at USA, and was diagnosed with subjective left upper quadrant edema. (Tr. 228-233).

Plaintiff was admitted to USA on October 15, 2008. Her physical exam was normal except for tenderness to palpation in the suprapubic area and left flank, non-fluctuant areas on her right pelvis and on her right inner thigh. She was diagnosed

with acute pyelonephritis[7]; nausea with possible gastroparesis; diabetes mellitus; vaginal discharge; chlamydia[8]; and two areas of cellulitis versus folliculitis. She was prescribed insulin, Reglan[9], Zofran[10], Levaquin[11]; and Clindamycin[12]. (Tr. 271-272). Upon discharge on October 16, 2008, Amy Woodward, M.D., reported that Plaintiff's principal diagnosis was acute pyelonephritis/urinary tract infection, and secondary diagnoses were diabetes mellitus, gastroparesis, peripheral neuropathy, and hypertension folliculitis. Plaintiff was instructed to follow-up with Dr. Woodward at Stanton Road Clinic in two weeks. (Tr. 273).

_____

[7] Pyelonephritis inflammation of both the parenchyma of a kidney and the lining of its renal pelvis especially due to bacterial infection. See www.nlm.nih.gov. (Last visited June 4, 2010).

[8] Chlamydia is a type of bacteria that causes an infection, and is spread through sexual contact. See www.medicinenet.com. (Last visited June 4, 2010).

[9] Reglan is used for the short term treatment of gastroesophageal reflux disease in patients who do not respond to other therapy. See www.drugs.com. (Last visited June 4, 2010).

[10] Zofran is used to prevent nausea and vomiting. See www.drugs.com. (Last visited June 4, 2010).

[11] Levaquin is an antibiotics used to treat infections caused by certain bacteria. See www.drugs.com. (Last visited June 4, 2010).

[12] Clindamycin is an antibiotic used to treat serious infections caused by bacteria. See www.drugs.com. (Last visited June 4, 2010).

On December 1, 2008, Dr. Woodward completed a Diabetes Questionnaire, and opined that clinical findings of elevated blood glucose and Hglo A/C on several occasions supported a diagnosed of type 2 diabetes that is not in good control. She further opined that Plaintiff suffers from physical limitations due to her disease, including severe diabetic neuropathy in her bilateral lower extremities and mild diabetic neuropathy in her bilateral hands. Dr. Woodward opined that Plaintiff has suffered from chronic lower extremity ulcers for over a year, which cause significant pain, worsening neuropathy and impaired glucose control. In response to a question about Plaintiff's ability to be employed, Dr. Woodward opined that Plaintiff's physical limitations would play a significant role in preventing strenuous activity for an extended period of time, and that "light duty without physical labor" would be the safest course. (Tr. 296-297).

The record reflects that Plaintiff was also treated at Mobile County Health Department (hereinafter "MCHD") from August 5, 2008 through August 18, 2008. The MCHD records reflect that on August 5, 2008, Plaintiff's physical exam was normal, and that her cholesterol, hemoglobin and glucose levels were elevated. She was counseled on cholesterol counting and aerobic exercise, and was scheduled for diabetes mellitus nutrition and self blood glucose monitoring classes. (Tr. 217-220, 222-227).

Plaintiff returned to MCHD on August 18, 2008 for an evaluation of her blood sugar. Her physical exam was normal, and her glucose was high. She was diagnosed with poorly controlled diabetes mellitus, instructed on the use of the "quik pen" and was referred for a diabetes study. (Tr. 214-216, 221).

Plaintiff was also treated at Stanton Road Clinic from October 15, 2008 through December 1, 2008. The records dated October 15, 2008 reflect that Plaintiff's physical exam was normal except for a small area on her left leg, tender to palpation of mid-epigastric area and lower quadrants, and pain and tenderness in the left flank. (Tr. 291-292). Plaintiff returned to Stanton Road Clinic on October 30, 2008. The notes reflect that Plaintiff had just been discharged from the hospital with pyelonephritis/urinary tract infection, with a history of diabetes mellitus and peripheral neuropathy. Also noted is Plaintiff's history of right hand middle finger surgery. Plaintiff's physical exam was normal except for a two to three cm diameter painful closed ulcer on her right shin. Plaintiff was diagnosed with diabetes mellitus, peripheral neuropathy, and chronic arthritis in right finger. She was prescribed Amitriptyline and her insulin prescription was renewed. (Tr. 289-290). During a follow-up visit on December 1, 2008, Plaintiff's physical exam was normal except for chronic

lesions on her skin.   She was counseled on her diet and prescribed Metformin[13] and Nova log.  (Tr. 287-288).

1. **Whether the ALJ erred by assigning Plaintiff a residual functional capacity ("RFC") of light work.**

Plaintiff contends that the ALJ erred in finding that she has the RFC to perform light work.   According to Plaintiff, the ALJ's findings that Plaintiff must alternate sitting and standing and that she is limited in her ability to do repetitive fine fingering with her right hand, contradict her finding that Plaintiff can perform light work.

Defendant argues that the ALJ did not find that Plaintiff was restricted to work with a sit/stand option, but rather found that Plaintiff is restricted to work allowing her to change positions at will.   He further argues that the loss of fine dexterity is a non-exceptional limitation that is an additional limiting factor to light work, and that the ALJ correctly enlisted the testimony of a VE to determine if jobs exist in the national economy that Plaintiff can perform with these limitations.

In determining Plaintiff's residual functional capacity, the ALJ stated as follows:

---

[13]Metformin is an oral diabetes medicine that helps control blood sugar levels.  See www.drugs.com.  (Last visited June 24, 2010).

I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant has to periodically change positions, she cannot do repetitive fine fingering with her right hand, and she cannot work at unprotected heights or around dangerous moving machinery because of her history of diabetic neuropathy.

(Tr. 17-18).

Based on this RFC, the ALJ then found that Plaintiff could perform other work, as follows:

[T]he claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as: mail clerk, which exists in numbers of 1,700 in the regional economy and in numbers of 141,000 in the national economy; linen grader, which exists in numbers of 1,100 in the regional economy and in numbers of 515,000 in the national economy; and photographer finisher, which exists in numbers of 10,000 in the regional economy and in numbers of 549,000 in the national economy.

(Tr. 21).

It is the task of the ALJ to determine a claimant's RFC. See, e.g., Phillips v. Barnhart, 357 F.3d 1232, 1238-1239 (11th Cir. 2004). RFC is what the claimant is still able to do despite her impairments, and is based on all relevant medical and other evidence. 20 C.F.R. §§ 404.1545, 404.1520(e). An RFC

can contain both exertional and nonexertional limitations. Phillips, 357 F.3d at 1242-1243. These limitations include a restriction to a particular physical exertion level (light, medium or heavy) and a particular skill level (unskilled, semi-skilled or skilled). 20 C.F.R. §§ 404.1567-1568. Each level is defined by regulation. Id. The RFC determination is used both to determine whether the claimant: 1) can return to her PRW under the fourth step; and 2) can adjust to other work under the fifth step. 20 C.F.R. § 404.1520(e). Thus, in determining whether Plaintiff can return to her PRW, the ALJ must determine her RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that she cannot return to her PRW, the ALJ moves on to the fifth, and final, step.

In the present case, Plaintiff's arguments regarding the ALJ's determination of her RFC must fail. First of all, the ALJ did not find that Plaintiff could perform a full range of light work, as implied by Plaintiff. Rather, the ALJ specifically found that Plaintiff could perform light work, but that she is limited by her need to periodically change positions, her inability to do repetitive fine fingering with her right hand

and her inability to work at unprotected heights or around dangerous moving machinery.

Secondly, Plaintiff's argument that these additional limitations somehow preclude her ability to perform any light work is simply incorrect. While Plaintiff's inability to perform a full range of light work precludes the use of the Medical Vocational Guidelines ("grids") in making a determination of disability, it does not mean that there is no light work which she can perform. The general rule is that "exclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.'" Phillips, 357 F.3d at 1242 (11th Cir. 2004) (quoting Francis v. Heckler, 749 F. 2d 1562, 1566 (11th Cir. 1985)). In such instances, the preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a vocational expert. Perry v. Astrue, 280 Fed. Appx. 887, 2008 U.S. App. LEXIS 12285 (11th Cir. June 4, 2008); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (unpublished).

Here, the ALJ thoroughly discussed the record evidence, including the medical evidence and Plaintiff's testimony, and found that Plaintiff is able to perform some, but not all, of the requirements of light work; thus, exclusive reliance on the

grids was not appropriate. The ALJ then elicited vocational testimony to determine whether Plaintiff could perform other jobs in the national economy. Relying upon the testimony of the VE, the ALJ found that Plaintiff could perform jobs in the national economy that are performed with her RFC. Accordingly, the undersigned finds that ALJ's determination that Plaintiff is limited to light work, with additional limitations, and her use of VE testimony to determine that Plaintiff can perform other work, was not error.

2.  **Whether the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's limitations in violation of 20 C.F.R. § 404.1545(b) and SSR 96-8p.**

Plaintiff argues that the ALJ did not properly consider all of her work-related functions as required by 20 CFR § 404.1545(b) and Social Security Ruling 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims. ("SSR 96-8p"). According to Plaintiff, the ALJ erred in failing to make specific findings regarding Plaintiff's ability to sit; stand; walk; lift; carry; or use hands, fingers, legs or feet. She further argues that the ALJ failed to make a specific finding of any postural or environmental limitations.

Defendant counters that the hypothetical questions that ALJ posed to the VE, and relied upon in her decision, included the ability to lift/carry 20 pounds occasionally and 10 pounds

frequently, and included restrictions from working at unprotected heights or around dangerous equipment, from work requiring repetitive fine fingering with the right hand, and the need to alternate positions. Defendant also argues that the record does not support restrictions on Plaintiff's ability to sit, stand or walk such that a specific finding as to those activities was required under SSR 96-8p. As for Plaintiff's need to change positions, Defendant argues that Plaintiff's need to "change positions at will" is different from a sit/stand option, such that the SSR 96-6p[14] requirement that specific times be assigned to each position is not applicable.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. In Freeman v. Barnhart, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007)(unpublished), the Eleventh Circuit held that an ALJ's failure to "more specific[ally] and explicit[ly]" set forth his findings with respect to a claimant's "functional limitations and work-related abilities on a function-by-function basis" is excusable where it is apparent the ALJ did "consider all of the evidence."; See also Chavez v. Astrue, 276 Fed. Appx. 627, 627-

---

[14] Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence ("SSR 96-6p").

28 (9th Cir. 2008) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 SSR LEXIS 5. This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis.") (internal citations omitted).

In this case, the ALJ summarized all the evidence, and after careful consideration of the entire record, found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CRF 404.1567(b) and 416.967(b)[15], and further found that Plaintiff needs to periodically change positions, and is precluded from any repetitive fine fingering with her right hand or work at unprotected heights or around dangerous moving machinery. In establishing Plaintiff's RFC, the ALJ took into consideration Plaintiff's limitations and assigned controlling weight to the opinion of Plaintiff's treating physician, Dr. Woodward, who opined that although Plaintiff experiences severe diabetic neuropathy in her bilateral lower extremities, she is capable of performing light

---

[15] Light work involves sitting two hours and walking and standing six hours in an eight-hour day, and lifting no more than 20 pounds at a time. <u>See</u> 20 C.F.R. § 416.967(b)(2009); Social Security Ruling ("S.S.R.") 83-10.

work. While Dr. Woodward opined that Plaintiff should avoid strenuous activity, there is nothing in Dr. Woodward's assessment or the medical records which suggest that Plaintiff's RFC is less than that established by the ALJ. Based upon a review of the record, the undersigned finds that substantial evidence supports the ALJ's finding with respect to Plaintiff's RFC as she properly and clearly considered all of the evidence regarding Plaintiff's functional capabilities, including Plaintiff's own assertions and the medical records, in making the RFC determination, and thereby complied with SSR 96-8p. The fact that the ALJ did not expressly address each functional ability, such as the ability to sit; stand; walk; lift; or carry is of no moment where the record clearly demonstrates that the ALJ considered all of the evidence, and further establishes that Plaintiff has the RFC set forth by the ALJ.

**3. Whether the ALJ erred in relying on the testimony of a VE to find that a significant number of jobs exist in the national economy that Plaintiff can perform.**

Plaintiff argues that the ALJ erred in relying on the VE's testimony that Plaintiff could perform the linen grader and photographer finisher jobs because both positions involve significant handling and frequent fingering, and the ALJ found that Plaintiff cannot perform repetitive fingering with her dominant right hand. (Doc. 13 at 7-8). Plaintiff argues that

relying on the VE's testimony was erroneous for the additional reasons that the VE did not distinguish between part-time and full-time positions when testifying about the jobs that are available in the national economy and because the DOT descriptions for the mail clerk, linen grader and photographer finisher jobs do not include any allowance for changing positions. (Doc. 13 at 7-9).

Defendant counters that the ALJ properly relied on VE testimony where Plaintiff's restriction of no repetitive fine fingering on the right hand represents a non-exertionnal limitation. Defendant further contends that Plaintiff can perform the jobs identified by the VE notwithstanding her fingering restriction because two of the jobs only require a low degree of fingering aptitude and the third job requires only a medium degree of fingering aptitude. (Doc. 15 at 17). With respect to Plaintiff's argument that the descriptions for mail clerk, linen grader and photographer finisher do not include an allowance for changing positions, Defendant argues that SSR 00-4p[16] requires the adjudicator to elicit a reasonable explanation for an "apparent unresolved conflict between vocational expert evidence and the DOT", and where the DOT is <u>silent</u> regarding

_____

[16] Social Security Ruling 00-4p: TITLES II AND XVI: Use Of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions(hereinafter "SSR 00-4p").

whether the occupations allow for a change of positions, VE testimony is appropriate. (Doc. 15 at 18). Finally, Defendant contends that Plaintiff's argument that the VE's testimony was flawed because the VE was not able to distinguish between the number of full-time and part-time jobs in the jobs she identified as existing in the national economy is without merit. According to Defendant, the VE testified that the information she used to supply the numbers was the best information available, and that she relied on this information as a vocational specialist. (Doc. 15 at 18).

The record reflects that a VE was present at the administrative hearing, and that the ALJ posed various hypotheticals to her. Before doing so, the following exchange took place between the ALJ and the VE:

> Q: I would ask, Ms. Gillespie, that if at any time today your testimony is going to deviate or be different than the information that's contained in the Dictionary of Occupational Titles that you would bring it to my attention.

> A: Yes, ma'am.

(Tr. 49).

The AJL then proceeded to pose several hypotheticals to the VE, including the following:

> Q: Let's assume that we have an individual with the same work history as Ms. Hall and let's assume that I find that the individual is limited from performing the following: lifting and carrying no more than 20

pounds occasionally and 10 pounds frequently; and could not perform any repetitive fine fingering with the right dominant hand, no other real restrictions on the use of the hand just can't do repetitive fine fingering.

A: Your Honor, the jobs that she did in the automobile detail as its performed in the national labor market is considered medium work and that would exceed the exertional demands that we've discussed. The work that she did as a general clerk or an office clerk would require fingering, but only at, at the frequent level it would not necessarily require -- you said no repetitive fine fingering,- -

Q: Right

A: -- so --

Q: No repetitive

A: Right. It does require some finger dexterity, it does require fingering, but not necessarily to the point -- if, if she can't do any repetitive, she probably could still go back to that position because--

Q: Okay.

A: -- it includes several different tasks.

Q: Okay

A: The other two jobs; the telephone solicitor certainly is going to require her to be on a computer for most of the shift and if she's unable to do repetitive fingering that probably would need to be eliminated, the housekeeping cleaner position would be realistic given, the limitations that you've described.

Q: Would be something that she could co[sic]?

A: Yes, Ma'am. Would be.

Q: Now I'm going to take it to the next step and ask about other jobs. In your opinion, are there any jobs

in the region or in several regions in the Country that an individual with the same work history as Ms. Hall and that is a younger individual with a limited education, able to perform?

A: Yes, ma'am. Looking predominantly at unskilled occupations in light of her education level one example would be a garment folder; the DOT code is 789.687-066, this is unskilled, light work with approximately 524,000 nationally and 10,000 in the State of Alabama. A second example would be a cafeteria attendant; the DOT code is 311.677-010, again, this is unskilled, light work with approximately 431,000 nationally and 2600 in the State of Alabama. A third example would be a mail clerk; the DOT code is 209.687- 026, again, this is unskilled, light work with approximately 188,000 nationally and 2,000 in the State of Alabama.

Q: Now if I had the, the same restrictions, but the individual would need to change positions from sitting to standing, or standing to sitting, or whatever, would have to be able to change positions, would that impact this job base that you've identified?

A: Yes, ma'am, it would. The cafeteria attendant position the individual performing that is going to be on their feet throughout their workday and that's not a job that could be modified for them to be able to perform the basic functions of the job if they have to be able to sit down periodically. The garment folder and the mail clerk position with some modification certainly – actually the mail clerk position, actually, is going to have alteration in sitting and standing built into the job and the garment folder certainly could be modified to include that.

Q: Would there be other jobs?

A: Yes, ma'am.

Q: Could you identify some for me please?

A: Yes, ma'am. One example is an outside deliverer; the DOT code is 230.663-010, again, this is unskilled, light work and would actually have the

positional changes built into the job as it's usually performed, there are approximately 141,000 nationally and 1700 in the State of Alabama. . . . Another example would be a linen grader; the DOT code is 361.687-022, this again is unskilled, light work with approximately 515,000 nationally and 11,000 in the State of Alabama. Okay. A third example would be a photograph finisher; the DOT code is 976,487-010, again, this is unskilled, light work with approximately 549,000 nationally and 10,000 in the State of Alabama.

(Tr. 51-53).

In the case sub judice, the undersigned observes that it is not clear that there exists a conflict in the VE's testimony and the DOT. While the DOT lists "Frequent Fingering, at up to 1/3 to 2/3 of the time" for the positions of mail ckerk, linen grader, and photographer finisher[17], the DOT does not make clear

---

[17] 209.687-026  MAIL CLERK  (clerical) alternate titles: mailroom clerk; mail sorter; postal clerk

DEFINITION:

Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING-MACHINE OPERATOR (clerical) 208.685-014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING-MACHINE OPERATOR (clerical) 208.582-010]. May be designated according

to type of mail handled as Mail Clerk, Bills (clerical).

GOE: 07.05.04

In the section delineating physical tasks, "Fingering: Frequently-Exists from 1/3 to 2/3 of the time" is also listed.

361.687-022  LINEN GRADER  (laundry & rel.)

DEFINITION:

Grades laundered towels and similar linens according to quality, condition, and kind of item. Ties them into bundles of specified size or number of articles and records contents of each bundle. Stores bundles in bins for delivery to customers of linen-rental service.

GOE: 06.03.02

In the section delineating physical tasks, "Fingering: Frequently-Exists from 1/3 to 2/3 of the time" is also listed.

976.487-010  PHOTOGRAPH FINISHER  (photofinishing)
alternate titles: print finisher

DEFINITION:

Performs any combination of following tasks to dry, trim, and mount photographic prints: Places washed print on conveyor leading to heated rotating cylinder that dries and flattens print. Trims print edges, using paper cutter or scissors. Inserts print in specified frame or mounts print on material, such as paper, cardboard, or fabric, using cement or hand operated press. Inserts print and corresponding negative in customer envelope. Computes price of order, according to size and number of prints, and marks price on customer envelope. May cut film lengthwise to separate individual print rolls, using slitting machine.

GOE: 05.10.05

In the section delineating physical tasks, "Fingering:

whether repetitive fine fingering (for both hands) is required for these positions. The DOT is also silent with respect to whether these positions can be performed with the option to alternate positions at will. As noted supra, the VE opined that a person with Plaintiff's RFC, age, skill, and educational level could perform all three positions. A VE is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. "A VE can assess the effect of any limitation on the range of work at issue (e.g. the potential occupational base); advise whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue; identify jobs which are within the RFC, if any exist; and provide a statement of the incidence of such jobs in the region in which the person lives or in several regions of the country." <u>Phillips</u>, 357 F. 3d at 1240 (quoting 1983 SSR LEXIS 32 at 6, 1983 WL 31253 at 3.)

Furthermore, SSR 00-4p, 2000 SS R Lexis 8, states in relevant part, as follows:

> Occupational Evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the

---

Frequently-Exists from 1/3 to 2/3 of the time" is also listed.

DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Following promulgation of SSR 00-4p, a panel of the Eleventh Circuit was presented with the question of whether an ALJ erred when he relied on the testimony of a VE without eliciting an explanation about an alleged "apparent unresolved conflict" between the testimony of the VE and the DOT as required by SSR 00-4p. <u>Miller v. Commissioner</u>, 246 Fed. Appx. 660; 2007 U.S. App. LEXIS 21153 (llth Cir. 2007)(unpublished). In rejecting the plaintiff's claim, the panel held "[e]ven assuming that an inconsistency existed between the testimony of the Vocational Expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the Vocational Expert. Our precedent establishes that the testimony of a vocational expert 'trumps' an inconsistent provision of the the DOT in this circuit." <u>See</u> <u>Jones</u>, 190 F. 3d at 1290-30. <u>Id</u>. The panel also held that agency rulings do not bind the court. <u>Id</u>.

As previously noted, the undersigned finds that in this case, it is not clear that a conflict exists between the testimony of the VE and the DOT where the DOT is silent with

respect to whether repetitive fine fingering (for both hands) is required for the linen grader, photographer finisher and mail clerk positions, and whether the need to alternate positions at will can be accommodated within these positions. Additionally, Plaintiff has not established that the ALJ violated SSR 00-4p. The ALJ expressly requested that the VE apprise her if the VE's testimony deviated from the DOT. The VE did not advise the ALJ of any conflicts, apparent or otherwise, and during the hearing, Plaintiff counsel did not allege that there existed any conflicts nor did he question the VE regarding any purported conflicts. Because no conflicts were identified, the ALJ was not required under SSR 00-4p to elicit a reasonable explanation from the VE as to any apparent conflicts, and did not err in relying on the VE's testimony to conclude that Plaintiff was capable of performing the positions. See Cammon v. Astrue, 2009 U.S. Dist. LEXIS 92293 (N.D. Ga. Oct. 2, 2009)(the ALJ did not err when she relied on the testimony of the VE where the ALJ had no reason to believe that there was any conflict between the VE testimony and the DOT and counsel did not question the VE about any alleged conflict.); Buchholtz v. Barnhart, 98 Fed. Appx. 540, 546 (7th Cir. 2004)(while the ALJ has a duty to question a VE about any inconsistencies with the DOT and resolve that conflict before relying on the VE's testimony, counsel has the responsibility for raising the issue if the ALJ does not.)

Finally, Plaintiff's argument that the ALJ erred in relying on the VE testimony in determining that Plaintiff could perform other work, because the number of jobs identified by the VE could not be distinguished between part-time and full-time, is also unpersuasive. First of all, Plaintiff has not cited any authority which requires the VE to distinguish between full-time and part-time positions. Moreover, testimony from a vocational expert is "highly valued and commonly obtained in order to establish the availability of suitable alternative jobs for disability claimants." Holley v. Chater, 931 F. Supp. 840, 851 (S.D. Fla. 1996), citing Decker v. Harris, 647 F.2d 291, 298 (2d Cir. 1981). Additionally, at the hearing in this case, the VE testified that the information she provides is based on the DOT, and that her computerized version of the DOT is linked to outlook information, which she updates by inputting information from the Federal Department of Labor and Bureau of Labor. (Tr. 56).

In sum, the undersigned finds that the ALJ properly relied on the VE's testimony to conclude that Plaintiff is not disabled, and her decision is supported by substantial evidence. See Orestano v. Comm. of Soc. Sec. Admin, 252 Fed. Appx. 962, 963, 2007 U.S. App. LEXIS 25677, at *2-3 (11th Cir. Oct. 31, 2007) (holding that where the ALJ found the claimant capable of performing a significant, but not full, range of sedentary work,

and used a VE to determine whether there were a significant number of jobs in the national economy that Plaintiff could perform, he applied the correct legal standards and did not err).

## V.    Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits, is **AFFIRMED.**

**DONE** this **29th day of June, 2010.**

**   /s/ SONJA F. BIVINS   **
**UNITED STATES MAGISTRATE JUDGE**